This was an action of trespass on the case against the bank, for refusing to permit the plff. to transfer bank stock on the books of the bank.
Narr. Plff. complains, c. "For that whereas the said Samuel M'Dowell before, and at the times of committing the grievances in the first, second and third counts of this declaration, mentioned was possessed of, and lawfully entitled to, a certain share or interest, to wit: thirty-six shares in the capital or joint stock of the Bank of Wilmington and Brandy wine, of the value of $1,080, then standing in the name of the said S. M'Dowell, and transferable by him in person or by his attorney, legally appointed, at the banking house of the said defts., on the books of the said defts., by them kept for that purpose, to wit: at the county afs'd.; and, thereupon, by reason of the premises in this count mentioned, it became and was the duty *Page 28 
of the said defts., to permit the said S. M'Dowell, in his proper person, or by his attorney legally appointed, to transfer his said share or interest in the said capital or joint stock in the said books of the said defts. to any person or persons whatsoever: And whereas also just before and at the time of committing the grievances hereinafter next mentioned, the said S. M'Dowell did sell and dispose of his said interest or share, to wit: thirty-six shares in the said capital or joint stock to one Robert Porter, of the county afs'd., and after the said sale, to wit: on the 24th Jan. A. D. 1829, at the county afs'd., did appear in his proper person, and present himself at the banking house of the said defts., for the purpose of then and there transferring his said interest or share in the said capital or joint stock to the said R. Porter, in the books of the said defts., by them kept for that purpose, and the said S. M'Dowell did then and there request the said defts. to permit him to transfer his said interest or share in the said capital or joint stock to the said E. Porter; yet the said defts. well knowing the premises, but contriving and intending wrongfully and unjustly to injure and damnify the said S. M'Dowell did, to wit: on c. at c., contrary to their duty, wrongfully and unjustly refuse to permit the said S. M'Dowell in his proper person to transfer his share or interest in the said capital or joint stock to the said E. Porter, at their said banking-house; by means of which said several premises, the said S. M'Dowell was unable to complete and was obliged to rescind the said sale of his said interest or share in said capital or joint stock, to the said E. Porter, and lost and was. deprived of the interest, gains, profit, benefit and advantage, which he would otherwise have derived and acquired, from the sale of the said capital or joint stock to the said E. Porter, and from the purchase money which he would have received therefor, to wit: at c."
The second count stated an agreement to sell to E. Porter, instead of an actual sale, and then the request to transfer, and refusal.
Third count. That plff. being possessed, c., and being desirous to transfer the said stock, applied to the bank, c., and the refusal c. Damages at $1,000. J. A. Bayard, pro quer.
The proof established that plff. was the owner of thirty-six shares of the stock; that he became the indorser of a note drawn by Thomas M'Dowell and discounted by the bank, which is still unpaid. The bank has obtained judgment on this note against both the drawer and indorser. The request of plff. to be permitted to transfer his stock, and the refusal of the bank were proved. It was also proved, that the bank had entered into an arrangement with Thomas M'Dowell the drawer of the note, who is a Notary Public, that he should do the protesting of the bank, and that a portion of his fees should be at stated times, applied towards the note. The sum so paid, has not been sufficient to keep down the interest. Thomas M'Dowell has had extensive deposits in bank since the note fell due, and the bank has permitted him from time to time, to check them out.
Wales, for deft.
By the showing of the plff. it now appears that this is the case of a creditor refusing to allow his debtor to take out of his hands a fund which he had a right, according to the principles of justice, to retain *Page 29 
in part, satisfaction of his debt. The plff. as holder of this stock, was a member of an association which had delegated to a certain body of directors, the power of making laws for the government of that association. The directors have made a by-law that no stockholder should transfer his stock while he was a debtor to the bank. The question then is, is this by-law valid? Is it reasonable; is it conformable to the constitution of the state and the laws thereof? Art. 5. Directors authorized to make by-laws. Art. 7. The shares of stock to be transferrable as the directors by by-law shall direct. In Feb. 1826, the board passed a by-law, that no stockholder indebted to the bank, should sell or transfer his stock while so indebted. Judgment of the bank against plff., April 7, 1819, for $5-11 16, which is still due and unsatisfied.
Bayard for the plff. to the jury.
The bank suffered the maker of this note, Thomas M'Dowell, to draw out of its hands funds sufficient to pay off the note, which we shall contend, under the direction of the court, is a discharge of the indorser. 4 Vesey, 821. Law vs. East India Co.
Payment of money by a creditor to the principal debtor after the debt is due, is a discharge of the surety. Where the principal has left a sufficient fund in the hands of the creditor and he pays it over, it discharges the surety. These deposits, what were they? A debt due from the bank to Thomas M'Dowell. In an action for them their own note could have been set off; and if they could set it off, they could retain it and were bound to do so, or the surety is discharged. 15Vesey, 577. The cash deposits are much larger than the note and interest.
Second. The bank entered into a new engagement with the drawer for the payment of this note, and this discharged the indorser or surety. But we contend, that the bank had no right to prevent the transfer of this stock, even if S. M'Dowell was indebted to them. The bank has no more right to establish a rule that they will hold on to the. stock of their debtors, than they would have to pass a by-law that execution should issue at once against their debtors without judgment. This by-law is repugnant to the laws of the state. The general law gives no lien except by contract as by hypothecation. This by-law undertakes to give the lien without contract. Growing liens, are always to be discouraged. 7 East, 224-8.
Rogers, for deft.
The plff. contends that there was an agreement between the bank and the drawer, which discharged the indorser. I have never heard such a parol agreement set up to discharge a written obligation. But this is not the case of drawer and indorser. Judgment has been obtained against both the M'Dowells, and they stand as principals. Even in a joint and several bond all are principals. But such an agreement as this would not even discharge an indorser. The same answer applies to the other objection, that deft. permitted Thomas M'Dowell to check out his deposits; and in addition, that if they sustained the relation of drawer and indorser, the indorser has no right to require the holder to retain general deposits. I admit the right of the bank to do so, but not its duty. *Page 30 
 The Court stopped the deft's. counsel on this point. We understand the question to be, whether this judgment can be discharged in a court of law by matter in pais. Supposing that the agreement here made with Thomas M'Dowell, or the conduct of the bank in permitting him to withdraw deposits would, as between principal and surety, or drawer and indorser, discharge the surety or indorser, (and we incline to the opinion that they would, especially the first,) can this be matter of defence in a court of law? We are clearly of opinion that it cannot be set up at law. It cannot be pleaded in discharge of the judgment, but can avail only as an equitable defence in a court of equity. See the case of Butler vs. Jarrold, recognized in the case of Bradun and Rice, in the Court of Errors and Appeals, but distinguished from that case. We will, of course, hear the other side on this question. 3 Stark. Ev. 1389; 8Price, 46$; 5 Barn. and Ald. 187.
Rogers, proceeds. The by-law is a valid one. It is made in conformity with the articles of association by which the plff. as one of the corporators, agreed to submit to such regulations as the directors should make in relation to this matter. It is authorized by the charter, and not repugnant to the laws of the state, nor the constitution.
Wales, on the same side.
The power of making by-laws is incident to a corporation without express grant, and it may be delegated. This is a reasonable by-law; highly beneficial to the corporation, and a safeguard to the corporators. The liability to such a by-law was one of the terms of the original subscription; a part of the agreement; and the present holder takes the stock, subject to the terms of the original subscription. It is a principle of all partnerships, that the partnership funds shall be first applicable to the partnership debts, and this banking institution is nothing more than a partnership for banking purposes.
In some acts of incorporation this rule is expressly contained; in the Bank of Maryland and Bank of Alexandria, it is so. It is, therefore, not repugnant to the constitution. Nor is it repugnant to the laws of the state; there is nothing in it either against public policy, or oppressive or unreasonable; nothing that deprives any one of a legal right which may not be controlled by his contract. It is not necessary that these by-laws should be published to bind, the corporators, for they have access to the books, and are presumed to know them. I submit then that this by-law is reasonable; useful, both to the corporators and the corporation; necessary, indeed, for the security of the partnership; and that it is not repugnant either to the constitution or laws of the state. It is moreover, for the public benefit, as it facilitates the making of loans by increasing the security.
Read, Jr., for plff. in reply.
First, as to the discharge. Can it be set up at law? The judgment in this case is not directly in controversy, it comes incidentally in question. This is an action on the case; the plea, not guilty. The judgment against an indorser does not change the relation, the relation of principal and surety as between him and the drawer still subsists. If he pays off the judgment, he is entitled to an assignment. (Hardcastle vs. The Commercial Bank, post.)
Altering *Page 31 
the mode of payment is a discharge of the indorser, and can the judgment alter this?
Second, the by-law. This must be supported, if at all, on the ground of lien. Liens are by custom or agreement. It is not known to the law as a customary lien, and it must rest on the footing of agreement. With regard to all such liens the rule is, that the knowledge of the lien must be brought home to the party. I refer to a case in 6 Term. Rep. (The linen bleacher's case.) These bylaws are private; not printed or published, as those of other banks are; the Farmers' Bank for instance. It could not be known to the plff. It is a peculiar one; not known in any other bank of this state. It is repugnant to the laws of the state. What was the law in relation to bank stock when this charter was granted? That it could not be taken in execution, attached or affected by legal process. A law has since been passed, making the stock liable to be taken in payment of debts. Now if it required an act of assembly to do this, is it possible that this, and more than this, could be done by a private rule of a petty corporation? It is repugnant also, because it is a summary remedy, unknown to the law, subjecting the owner of stock to what is equivalent to execution process, without suit or judgment. It is against policy, because it stops the transfer of personal property, and locks up this species of property, which should be the most transferable; and it is partial, unjust and arbitrary; leaving a discretion to directors to transfer, to enforce, or suspend it at pleasure.
By the Court. — The first question in this case is, was Samuel M'Dowell, in Jan. 1819, indebted to the bank? This includes a question of law. The plff. indorsed a note to deft's. on failure to pay which, he became liable as the indorser. Suit has been brought and judgment obtained against him on this responsibility. It is not contended that this judgment has been actually paid, but that it has been discharged by an agreement between the bank and the drawer. The actual payments under this agreement must, of course, be applied. But it is also said that this judgment has been discharged by the bank permitting the drawer to check out funds which they might have applied to it. If this question were on the note simply, it might be a discharge; but here is a judgment, and you cannot discharge a judgment by matter of a less grade. This is the rule at law. Nothing but actual payment, or release, will discharge at law. The indebtedness therefore, of the plff. is established.
Second. Whether, under the by-law, the bank has a lien on this stock, and could lawfully prevent its transfer. We would like more time to examine this question, but must now decide it on the best consideration we have been able to give it. This bank commenced under certain articles of agreement, one of which gives the board of directors authority to make rules concerning the transfer of stock. It invests them with a general power to regulate this matter. A bylaw was made in 1826, prohibiting any member of the corporation from transferring his stock whilst indebted to the bank. The charter, 1D. L. 328, confirms these articles and also gives the power to make by-laws. These by-laws must be reasonable and consistent with the laws of the state. We see nothing in this one unreasonable *Page 32 
or repugnant. It does not affect other than members of the corporation whose privilege and duty it is, before they become such, to acquaint themselves with the rules of the institution, so far as they would affect their interests. In reference to the institution it is a very salutary rule; greatly to the security and advantage of the stockholders, and to the public, by facilitating loans. It is, therefore, in our opinion a valid by-law, and binding on all the corporators. In this opinion we are supported by the decision of a very able man, reported in 2 Peere Wms., 207, in the case ofChild vs. Hudson's Bay Co., where it was decided that the company could take the stock of a member for his debts, under a by-law similar to this. The legal interest in all the stock is in the corporation for its benefit. We therefore think that, under the circumstances of this case, supposing the indebtedness of plff. to the bank proved, they were authorized to refuse him permission to transfer his stock.
 The plff. being called, was non pros'd.